1    United States District Court

2    Southern District of California

3

4  UNITED STATES OF AMERICA,        )
                                    )
5                    Plaintiff,     )
                                    )
6        vs.                        ) Case No. 12-CR-0768 LAB
                                    ) Motion Hearing
7  VIRGINIA MADRID,                 )
                                    )
8                    Defendant.     ) Monday, June 8, 2015
   _____ )
9

10            Before the Honorable Larry A. Burns
                 United States District Judge
11

12  Appearances:

13  For the Plaintiff:       Laura E. Duffy
                             UNITED STATES ATTORNEY
14                           Tara McGrath
                             ASSISTANT U.S. ATTORNEY
15                           880 Front Street, Suite 6293
                             San Diego, CA  92101
16
    For the Defendant:       Jami L. Ferrara, Esq.
17                           LAW OFFICES OF JAMI L. FERRARA
                             964 Fifth Avenue, Suite 335
18                           San Diego, CA  92101

19

20

21  Official Court Reporter: Debra M. Henson, CSR, RPR
                             Carter Keep U.S. Courthouse
22                           333 W. Broadway, Suite 420
                             San Diego, CA  92101
23                           (619) 238-4538
                             *courtreporterusdc@sbcglobal.net*
24

25            Record produced by stenographic reporter

1    <u>San Diego, California - Monday, June 8, 2015</u>

2    (The defendant is not present.)

3    THE CLERK:  Calling number 2 on the calendar,

4    12-CR-768, United States of America versus Virginia Madrid.

5    If counsel could state their appearance for the record.

6    MS. FERRARA:  Good morning, your Honor.  Jami

7    Ferrara on behalf of Ms. Madrid.  She is not going to be

8    present.

9    THE COURT:  Good morning, Ms. Ferrara.

10   MS. MCGRATH:  Good morning, your Honor.  Tara

11   McGrath for the United States.

12   THE COURT:  Good morning, Ms. McGrath.  I ruled on

13   a Rule 35 motion.  I got a subsequent motion, joint motion,

14   from the parties to redact certain portions of what was said

15   in the Rule 35 motion.  At this point I'm not prepared to do

16   that, and let me tell you what my thinking is on this.

17   First, it's very clear that the presumption of openness

18   applies to Rule 35 proceedings, not just the government's

19   application but the Court's ruling on that.  There's a

20   specific case on point not cited in the papers that I

21   received, which is CBS v. U.S. District Court for the Central

22   District of California -- I don't know if either of you

23   looked at this -- 765 F.2d 823, Ninth Circuit, 1985.  In this

24   case the Ninth Circuit holds in particular that Rule 35

25   proceedings are and should be open to the public, that they

1 are subject to the presumption of openness.  Then Judge

2 Kennedy, now Justice Kennedy, writes as follows, that first,

3 the presumption that the public and press have a right of

4 access to criminal proceedings and documents filed therein

5 applies in a Rule 35 context.  They say we find no principled

6 reason for affording greater confidentiality to post-trial

7 documents than to pretrial matters.

8     That being the case, they talk about the

9 presumption of openness, and they talk about the interest

10 that is necessary and must be shown in order to override the

11 presumption.  They said that the interest which overrides the

12 presumption of open procedures must be specified with

13 particularity, and there must be findings that the closure

14 remedy is narrowly confined to protect the interests.  Among

15 the things they say a judge must do before he seals a Rule 35

16 motion is look at other alternatives, and among the

17 alternatives he lists is participation in the Witness

18 Protection Program.  Now, that's a pretty strong statement of

19 how strong the presumption is, that a judge should find out

20 about whether a witness is eligible for Witness Protection

21 Program as an alternative to sealing.

22     The interest -- the Ninth Circuit has called the

23 presumption of openness in these cases a very strong

24 presumption.  Nondisclosure, quote, is strictly -- and may be

25 ordered only when it, quote, is strictly and inescapably

1　necessary, end quote, to protect a compelling interest.  The

2　proponent of nondisclosure has to show that disclosure will

3　cause irreparable harm or some other compelling interest --

4　or that some other compelling interest is at stake, that

5　there's no alternative to nondisclosure that will adequately

6　protect the interest, and that nondisclosure will adequately

7　protect against the perceived harm.

8　　　　There's one other thing that I think is at play in

9　this case, and that is that once information is made public,

10　once it's known, there's very little chance of overcoming the

11　presumption; republication of information that's already out

12　there rarely qualifies as a compelling need.

13　　　　Here, I'm not positive on the facts, but it appears

14　the government says in their Rule 35, Ms. Madrid's

15　cooperation was made known to the person against whom she was

16　cooperating, who ultimately pled guilty.

17　　　　MS. FERRARA:  It was made known to the defendant in

18　that case --

19　　　　THE COURT:  Right.

20　　　　MS. FERRARA:  -- subject to a protective order.  It

21　was not public.

22　　　　THE COURT:  Yeah.

23　　　　MS. FERRARA:  It was not publicized.

24　　　　THE COURT:  But the defendant knows about it,

25　right?  What's to keep --

1        MS. FERRARA:  He knows -- he knows that she was

2   going to cooperate, that she was cooperating against him,

3   but --

4        THE COURT:  So what's to keep him from telling

5   other people that she's a cooperator, she's a snitch?  Seems

6   like a big loophole here.

7        MS. FERRARA:  Oh, sure, he could say that, your

8   Honor, but then he -- now he can also get your order and he

9   can distribute that to people, they can use that as paper

10  to --

11       THE COURT:  So --

12       MS. FERRARA:  -- harm her.

13       THE COURT:  -- tell me what --

14       MS. FERRARA:  It would have just been his word

15  before.

16       THE COURT:  That's all hypothetical.  And if, you

17  know, if you were right that that sufficed to meet the

18  showing necessary here, then in every case where there was

19  cooperation, there would have to be a sealed record, every

20  single one.

21       The requirement is more specific than that,

22  Ms. Ferrara.  It says that the proponent of nondisclosure has

23  to show that it's strictly and inescapably necessary.  I just

24  don't see that here because we have an open conduit to the

25  prison saying Ms. Madrid is a snitch and apparently nothing's

1   happened yet; I don't have anything in the application to me

2   that says she's been subject to recrimination or retaliation

3   or even threats of that.  I mean there's nothing.  There was

4   just this idea that well, if you cooperate -- and I

5   understand why there was that idea -- that if you cooperate,

6   you're going to be subject to some kind of physical harm.

7   There's no flesh on the bones here.

8           MS. FERRARA:  I guess I'm a little confused, your

9   Honor.  You have -- you have a policy that is unique to this

10  courtroom.

11          THE COURT:  No, it's not.

12          MS. FERRARA:  Okay.  Well --

13          THE COURT:  It shouldn't be if it is because I'm

14  reading from Ninth Circuit law, not unique to this courtroom.

15  I don't want to be marginalized like that.

16          MS. FERRARA:  I'm sorry.

17          THE COURT:  If others aren't following the Ninth

18  Circuit case law, then shame on them.

19          MS. FERRARA:  Okay.  That's fine.  The only time

20  I've encountered this has been in your courtroom.

21          THE COURT:  That's right because -- because we tend

22  to seal things willy-nilly and ignore these prohibitions on

23  sealing, that's why.

24          MS. FERRARA:  Okay.  So when we filed the -- when

25  the rule -- the 5K motion was filed, you told us that the

1    fact of Ms. Madrid's cooperation needed to be public but the

2    underlying facts, the reason why --

3              THE COURT:  Right.

4              MS. FERRARA:  -- were to be filed under seal --

5              THE COURT:  I agree.

6              MS. FERRARA:  -- which we complied with, which is

7    exactly what we did with the Rule 35 motion.

8              THE COURT:  But there was an intervening --

9              MS. FERRARA:  But then --

10             THE COURT:  -- circumstance that --

11             MS. FERRARA:  -- you filed an order and you --

12             THE COURT:  There was an intervening --

13             MS. FERRARA:  -- unsealed all of that information.

14             THE COURT:  Ms. Ferrara, there was an intervening

15   circumstance that you're ignoring, which is that the object

16   of the cooperation -- the guy who was prosecuted -- was told

17   she's cooperating against you.  And I assume that they were

18   given under Jencks everything that she said, all the reports

19   that laid out what was in the original submission to me.

20   That happened in between the two actions of mine that you

21   speak of.  And once the cat was out of the bag, what

22   prohibits republication of the information?  He knows now, he

23   knows, and he can tell anyone and everyone.  He can have a

24   siren out there --

25             MS. FERRARA:  But now he can use your order --

1          THE COURT:  Pardon me?

2          MS. FERRARA:  And now he can use your order to do

3    that.  But apart from all that --

4          THE COURT:  He could do it independent of my order?

5          MS. FERRARA:  -- your Honor, you didn't even give

6    us an opportunity to be heard on it.  You took information

7    that had previously been filed under seal and with no notice

8    to myself to give my client notice or to the government, you

9    published it, and you effectively unsealed it without giving

10   us an opportunity to respond.  You unsealed information that

11   was ordered sealed by the Central District of California

12   without giving anybody any opportunity to respond.

13         THE COURT:  They ordered -- they ordered that the

14   original 5K --

15         MS. FERRARA:  I have a copy --

16         THE COURT:  -- remain sealed?

17         MS. FERRARA:  -- of the protective order.

18         THE COURT:  No, but you're saying that they ordered

19   the information in our case be sealed?

20         MS. FERRARA:  No, the information that she had

21   cooperated, the fact that she had -- that her identity had

22   been revealed in the information that was provided, which is

23   in essence the information that Ms. McGrath put in your

24   motion -- in our motion.

25         THE COURT:  Okay.  So let's -- let's cut to the

1    merits here.  What information do I have that shows me that

2    sealing in this case of her status as a cooperator and my

3    characterization, for example, which you've suggested be

4    deleted, that she was probably the bigger fish turned on the

5    smaller fish?  What information or evidence is there that's

6    strictly and inescapably necessary in order to protect some

7    compelling interest?  I just don't see it.  I haven't seen

8    anything that makes that case to me.

9         MS. FERRARA:  Her safety is not a compelling

10   interest?

11        THE COURT:  Is her safety implicated here?  I mean,

12   as I said, the problem with the argument is it proves too

13   much.  In every case where there's a 5K, you would say it

14   must be sealed because there's always a possibility that

15   there'd be some recrimination.  I need something more than

16   that; otherwise, you know, these sealing procedures and this

17   standard means nothing.

18        MS. FERRARA:  Well, you can -- you can file a

19   written order that says that you're denying a Rule 35 motion.

20   You don't have to put in all the facts of her cooperation.

21   That's -- we've asked for that to be redacted.

22        THE COURT:  Well, you know, there's an interesting

23   point about that, and I cited it in -- and Mr. Hermansen's

24   here -- there's a case called U.S. v. Alcantara, 396 F.3d

25   189, 198-199.  It's a Second Circuit case.  Here's what the

Second Circuit case says about sentencing, adjustments in
sentencing law:  The ability to see the application of the
sentencing laws in person is important to an informed public
debate over these laws.  Observing the effect of the laws
that expand or contract the discretion of judges in imposing
sentences in individual cases may provide a valuable
prospective, end quote.

Now, that's a case where the argument was made at
the time of original sentencing, and I think the judge in
that case agreed with the parties about secrecy, there was a
challenge to that, and it was -- the practice was set aside.

But I'm mindful of the public debate going on now.
Three candidates by my count, three candidates who are
running for president, have talked about the specter of mass
incarceration of low-level offenders.  And here there's a
significant difference in opinion about what ought to happen
to Ms. Madrid between me and the government.  Here's a woman
who admitted that on six occasions she brought
methamphetamine in, a huge amount the last time.  She admits
that for three years prior to being caught on this occasion,
she was running drug money on a weekly basis for a drug
organization making $3,000 a run.  Now, to me that's not a
low-level offender, and her incarceration couldn't reasonably
be characterized as a mass incarceration.  As I said, there's
a public debate going on about this now.

1        The government thinks well, the measure of

2  punishment for someone who has cooperated with that

3  background is 69 months.  I happen to disagree with that.

4  And I think it's important that anybody that looks at this

5  says well, here's the judge's perspective, here's the

6  government's perspective, and here's why the judge doesn't

7  think 69 months is a proper punishment in light of all the

8  sentencing factors.

9        MS. MCGRATH:  Your Honor, I'm sorry.  I need to

10  chime in just briefly on the record because I think what's

11  getting mixed up a little potentially is the Court denying

12  our order.  The issue that the Court raises about Ms. Madrid

13  and her conduct, that's a totally separate point than what

14  was revealed in the public order; and what I want to make

15  sure that the record is clear on is that our Rule 35 motion,

16  the Court granted our sealing motion for the substance of

17  that Rule 35.  Then, a short time later, approximately six

18  weeks later, after granting the sealing order on the factual

19  portion of that motion, the Court published an order

20  disclosing the sealed information without any notice to

21  either party.  So while Ms. Ferrara and I may not agree with

22  what the Court's actual order was with regard to the Rule 35,

23  that's a whole separate issue about the disclosure.

24        And so what I also wanted to cite for the record is

25  that there -- none of the information that had been

1    previously ordered sealed -- the dates of her debriefs

2    that -- the substance, the detailed nature, the specific name

3    of the individual against whom she had cooperated -- none of

4    that was in the public record.  It was absolutely disclosed

5    to him in the Central District case subject to a protective

6    order --

7            THE COURT:  Well, what prevents him from telling

8    everybody and anybody that'll listen to him that Ms. Madrid

9    cooperated against me and I had go down on a 72-month drug

10   count because she snitched on me?

11           MS. MCGRATH:  There's a --

12           THE COURT:  What prevents that now?

13           MS. MCGRATH:  There's an enormous difference

14   between his word and the word of this Court.  What he says --

15           THE COURT:  Well, what -- you didn't answer my

16   question, Ms. McGrath.  What prevents him from telling anyone

17   and everyone who will listen that Ms. Madrid cooperated

18   against him and snitched on him?

19           MS. MCGRATH:  Well, your Honor, he is subject to

20   the protective order, his counsel is subject to the

21   protective order.  If he violates that, I don't know what

22   sanctions are available in the Central District, but I do

23   know that that order applied to his case.  So I have to

24   assume that if he did that, he'd be in violation of that

25   order, and so, in theory, he shouldn't do that because he'd

1  be in violation of a court order up there.

2          But the credibility of that individual compared to

3  the credibility of the paper that Ms. Madrid now has hanging

4  off her tail everywhere she goes, it's in writing now that

5  Ms. Madrid cooperated, and it's in a court order, and that

6  paper tagging her for the rest of her -- and this Court knows

7  as well as I do what paper is to a defendant -- and that when

8  she shows up on a new yard, they --

9          THE COURT:  I don't -- honestly, I don't know that

10  in every case.  I understand the concern that arises, but I

11  have to tell you, in many of the declarations I read about

12  cooperation from your office, it doesn't seem like very

13  substantive cooperation:  First name of a person, last name

14  unknown, Madrid's Tire Shop in Tijuana.  A lot of times I'm

15  skeptical that Jose even exists or that there's a Madrid's

16  Tire Shop or had anything to do with anything, and --

17          MS. MCGRATH:  As am I.

18          THE COURT:  -- in short, the possibility of any

19  kind of recrimination is wholly illusory; it's all

20  speculation.  And then to say okay, we're going to

21  automatically seal in every case because we're afraid of that

22  when there's been no showing that meets this very strict

23  standard for sealing, I just can't do that.

24          MS. MCGRATH:  Well, your Honor -- and I share the

25  Court's speculation that those tire shops actually exist or

1  that, you know, the fictitious name actually was the

2  recruiter, but that's not the case here. Ms. Madrid gave

3  information that was actionable that led to an arrest of an

4  individual and his conviction and sentencing.

5          THE COURT: Okay. So the good point that both of

6  you make is that you probably should have had notice before I

7  changed course, which I acknowledge happened in this case. I

8  focused on the intervening event that I did not know that the

9  defendant was told, was revealed, she was moved to a

10 detention facility close by where she was supposed to testify

11 for seven months.

12          Here's what I'll do. I'm going to reseal the Rule

13 35. I'm going to withdraw the order, but I am not buying in

14 to all of the redactions that either of you have suggested.

15 And if you want to rewrite the opposition and tell me why

16 it's strictly and inescapably necessary that some of that

17 information not now be made public in light of the subsequent

18 developments, I'll reconsider that. But we'll return it to

19 the status quo. I commend you to look at the cases that I

20 mentioned because I'm going to follow that standard. And if

21 you can show me that there's some real possibility of harm to

22 her or recrimination, not just a hypothetical that applies in

23 every case where somebody cooperates, then that's a basis for

24 sealing and, you know, I'll use common sense about it; I'm

25 not going to be real strict about that. But here there's

1  just no specter of it.  I mean he's been sentenced since

2  when, 2013?

3          MS. FERRARA:  No --

4          MS. MCGRATH:  No, he's just -- your Honor, that's

5  when the Rule 35 motion went in, and that's why it took so

6  long for the United States to put that --

7          THE COURT:  When was he sentenced, this year?

8          MS. MCGRATH:  He just got sentenced a week or two

9  before I submitted it, so I think I submitted it in April,

10 and I think he was sentenced in March.

11         THE COURT:  All right.  But I want you to look back

12 over that.  I think that the revisions that both of you

13 recommend are -- are too great.  I mean, for example, the

14 Court's characterization about her role in this?  You know, I

15 do have the impression that big fish was set after a little

16 fish based on the information I had.  Here's a person that

17 had a prior border smuggling felony, gets convicted a second

18 time, admits -- and it's not disputed in the probation

19 report -- as I said, that she'd done it six times before as

20 well as having been a drug money courier for three years

21 going into the getting caught on this thing; and then she

22 turns on a guy who has much less methamphetamine, there's no

23 indication that that guy has any record.  And, you know, it

24 just seems to me like they're trolling, you know, for minnows

25 with a shark.  Now, you get to do that, but, you know,

whether I give that great credit is another reason, another

story, and it points to the difference between my view and

the government's view, which I think is important for a

public to understand. So I'm not inclined to redact my own

characterizations of things.

Now, that's different from the information that's

contained in the debriefings, but -- I'd be interested to

know what was mentioned in -- what was the other fellow's

name, Eunice --

MS. MCGRATH: Your Honor, his name is David

Martinez. He was sentenced on April --

THE COURT: Martinez, yeah. Do you have a

transcript of the sentencing in his case?

MS. MCGRATH: I don't have that transcript, your

Honor. If the Court's interested in it, I could get it.

THE COURT: Well, I mean it may be helpful to you

in identifying why the interest here is strictly and

inescapably necessary and requires sealing and redacting of

information. I mean I'd want to know that if there was a --

as you pointed out, there was some effort to keep, you know,

her involvement secret. And Ms. Ferrara's point that

everybody's doing this doesn't give me any confidence that

the L.A. judge followed these standards either. I don't know

whether he or she did or didn't. But I'd have to be

convinced of that before I add, you know, a happy face and my

1  imprimatur to it.

2  MS. FERRARA:  Your Honor -- and I apologize for

3  saying that everyone's doing it but you -- what I meant --

4  THE COURT:  No, I think that's right.  I think

5  you're right.

6  MS. FERRARA:  But what I meant was we were

7  following the parameters that you had set out for us, and

8  then you changed the game in the middle --

9  THE COURT:  You're right.

10  MS. FERRARA:  -- and I didn't have any opportunity

11  to prepare my client --

12  THE COURT:  You're right.

13  MS. FERRARA:  -- that there's a nine-page document

14  out there --

15  THE COURT:  I should have given notice.  We'll

16  withdraw the order today, immediately.

17  MS. FERRARA:  Thank you.

18  THE COURT:  And nothing has been unsealed, I didn't

19  unseal the declaration at this point, so that will remain

20  sealed.  But I want you in short order -- so I can, you know,

21  republish this -- to look at it, look at these cases, and

22  tell me what you think qualifies under this standard because

23  that's the standard that I'm going to follow, Ms. Ferrara.

24  MS. FERRARA:  I understand.

25  MS. MCGRATH:  We'll do that immediately, your

1    Honor.  And just for the record, for the clarification for

2    the Court, he was sentenced in the Central District on

3    April 16th of 2015.

4            THE COURT:  Okay.  I mean it might help for you to

5    get a transcript and see what was said there; it might help

6    for you to pull the transcript in this case and see what was

7    said here.  Do you have it?  Do you have a transcript of Ms.

8    Madrid's --

9            MS. MCGRATH:  I do believe that I have the

10   transcript of this case.  I see, your Honor -- I'd have to

11   check.  It was a while ago that she was sentenced before your

12   Honor, but --

13           THE COURT:  Yeah.

14           MS. MCGRATH:  -- the AUSA up there and I have had

15   many, many conversations about this case; I'm in frequent

16   contact with her, so while I haven't reviewed the transcript,

17   I am familiar with what took place at that proceeding.

18           THE COURT:  I don't want to be reckless about this,

19   Ms. Ferrara.  You know, if you can point to some fact that

20   indicates she's in, you know, some kind of jeopardy, then,

21   you know, I'll embrace that.  But what I'm not willing to do

22   is just rubber stamp every one of these cases where there's

23   ostensible cooperation and say okay, you say there's

24   cooperation, that means everything's going to be sealed.

25   That's against the law.

1        MS. FERRARA:  Your Honor -- and I do get that, but

2   the thing is is every case -- I mean if you just think about

3   the discovery process that we have in this district now, how

4   it has changed, how all of these big cases, our discovery is

5   governed by a protective order --

6        THE COURT:  Right.

7        MS. FERRARA:  -- because of the importance of

8   paper.

9        THE COURT:  Right.

10       MS. FERRARA:  I cannot print anything out in most

11  of my cases now and give it to my client for fear that that

12  paper is --

13       THE COURT:  Right.

14       MS. FERRARA:  -- going to be used to hurt my

15  client.  So while I can stand here today and say I don't know

16  for sure if this is harming Ms. Madrid right now, but we

17  would have to say that every single day until she gets out of

18  custody --

19       THE COURT:  No, I don't think so.

20       MS. FERRARA:  -- that there's a nine-page written

21  order with information that you have disclosed --

22       THE COURT:  You and I both know that there's cases

23  where the danger to an informant is manifest immediately --

24  I've seen those cases -- and we take special steps there.

25  And what am I to do about this suggestion that I have to

1  embrace all reasonable alternatives before sealing, including

2  participation in the Witness Protection Program?  Now, that's

3  a pretty radical step, right?  Turning to the government and

4  saying well, put her in the Witness Protection Program as an

5  alternative to sealing?  That didn't come from me.  That came

6  from former Judge now Justice Kennedy saying these are the

7  minimization steps that a judge must take before sealing.  It

8  seems to me the presumption is pretty strong, it's pretty

9  strong.  So I'm troubled by this.

10        I'll immediately withdraw the order.  The sealing

11  has remained on the Rule 35 submission, which was kind of a

12  sloppy misstep by me.  But you should be prepared to also

13  address, you know, what portion of that declaration in

14  support of it ought to be sealed and what should be unsealed.

15        There's two cases that I'll also call your

16  attention to that I think you should take a look at.  These

17  are Fourth Circuit cases.  Virginia Department of State

18  Police v. Washington Post, 386 F.3d 567 -- 386 F.3d 567 --

19  Fourth Circuit, 2004, and In Re: Charlotte Observer, 921 F.2d

20  47 at page 50, also Fourth Circuit, 1990.  Both of those

21  cases say that where the information is known to the public,

22  once announced to the world, the information has lost its

23  secret characteristic and sealing is not indicated, can't

24  meet the standard.  I'm a little concerned about that here.

25        MS. FERRARA:  But that --

1          THE COURT:  I get it he doesn't have a megaphone,

2     but the implications of your argument, Ms. Ferrara, is that,

3     you know, even the fact of the Rule 35 should not be known

4     because it indicates cooperation.

5          MS. FERRARA:  I didn't say that though, your Honor,

6     but what you're saying --

7          THE COURT:  Those are the implications though.

8          MS. FERRARA:  -- you're saying that once the

9     information becomes public that you can't unring that bell?

10          THE COURT:  Right.

11          MS. FERRARA:  But you rang the bell without giving

12     us a chance --

13          THE COURT:  I get that.  That's why I'm --

14          MS. FERRARA:  -- and so the fact that that

15     information is out there now is only because of your order,

16     your Honor.

17          THE COURT:  That's why I'm doing what I'm doing and

18     withdrawing the order at this point, giving you both a chance

19     to tell me, you know, what portions of that order ought to be

20     redacted pursuant to this standard.  But the implications --

21     I didn't say you argued this -- the implications of your

22     argument is even the fact of the Rule 35 should be sealed

23     because someone would deduce from that that she's cooperated

24     and then she'll be labeled a cooperator; or in the case of a

25     sentencing summary chart that indicates 5K, that that should

1   be always filed sealed because the fact of cooperation will

2   be known.  I don't go that far.  I don't think the cases go

3   that far.

4           MS. FERRARA:  Just assuming arguendo right here

5   right now for this case, if I don't disagree with that, if

6   there's a motion or a sentencing summary chart that says

7   5K1.1, minus four, that does not give the information that

8   you are saying --

9           THE COURT:  You're right.  No, it doesn't.

10          MS. FERRARA:  -- should be made public.  So right

11  now, even before you file this order, say Mr. Martinez had

12  violated that protective order and he's out in the jails and

13  he's telling everybody "Virginia Madrid was going to

14  cooperate against me," nothing under all of the parameters

15  that we know of thus far, M.A. and all of that, no particular

16  damage could be done do to. Martinez (sic), no hit can be

17  ordered on her unless they have paper.  They have a nine-page

18  court order --

19          THE COURT:  How do we know that?  I mean you're

20  saying the strength of his say-so is not enough to --

21          MS. FERRARA:  The strength of his say-so is not

22  enough under all of these prison gangs that we talk about.

23  Everybody wants paper, your Honor.  I have 1326 clients who

24  are emailing me and asking me to send them paper so they can

25  prove that they're not snitches.  That's 1326s.

1          THE COURT:  So you're -- but you're telling me that

2     if he's hooked up to some prison gang that can do harm to

3     her --

4          MS. FERRARA:  -- without paper --

5          THE COURT:  -- and he says look, I can tell you

6     first hand, I mean I'm the guy she's cooperating against,

7     this is why I had to plead, because I had reports showing

8     that she was going to snitch on me and I was told she'd been

9     moved to a facility --

10          MS. FERRARA:  Didn't have the paper.

11          THE COURT:  -- close to the jail or close to the

12     court where I was going to testify, she was there, and all I

13     -- the only thing I didn't see were the whites of her eyes,

14     you're saying that's not enough?

15          MS. FERRARA:  He didn't have paper until you issued

16     that order.

17          THE COURT:  Well, he must have had Jencks Act

18     material --

19          MS. FERRARA:  It was under a protective order.

20          THE COURT:  -- that the U.S. Attorney in -- pardon

21     me?

22          MS. FERRARA:  It was under a protective order.

23          THE COURT:  Oh, I know, but he had access --

24          MS. FERRARA:  -- have a physical piece of paper --

25          THE COURT:  -- he had access to it --

1          THE REPORTER:  I'm sorry.  I can't --

2          MS. FERRARA:  I'm sorry.

3          THE COURT:  Do you know whether he had access to

4   the reports of what she was saying about him?

5          MS. FERRARA:  They were issued under protective

6   order, so his lawyer couldn't give them to him.

7          THE COURT:  Oh, it was the lawyer's eyes only?

8          MS. FERRARA:  No.  The protective orders that we

9   have here say that I can show things to my client but I can't

10  physically give them the paper.

11         THE COURT:  I got it.

12         MS. FERRARA:  I assume that it's the same

13  protective order.

14         THE COURT:  We don't know that though for sure,

15  right?

16         MS. FERRARA:  Actually I do have the protective

17  order.  Let me look.

18         THE COURT:  Anyway, look, it's -- that's an

19  interesting side note.  If that's the case, put it in your

20  renewed motion to me and I'll certainly take that into

21  consideration.  Tish, make a note in the docket on this case

22  to immediately pull the Rule 35 order that I issued.  Pull

23  that out of the docket.  Everything else I think is still

24  status quo, right?

25         MS. FERRARA:  Yes.  Should we have a hearing date

1    for this?

2              THE COURT:  Yeah, we probably should.  There may

3    still be disagreement.  I tell you what I won't do:  I won't

4    publish another order until I run it by the two of you and

5    get your objections.

6              MS. MCGRATH:  Thank you, your Honor.

7              MS. FERRARA:  Thank you, your Honor.

8              THE COURT:  So get your -- there's no time

9    sensitivity to this.  Submit your -- I suppose it's going to

10   be a joint proposal unless the two of you disagree on how the

11   standard applies here, and then we'll have a hearing, and

12   I'll hear you out on those portions of it.  I've indicated

13   some opposition to things that you've blanked out here.

14             MS. MCGRATH:  And I heard that, your Honor.  And

15   we'll meet this week and get that right back to the Court

16   immediately.

17             THE COURT:  Okay.  So as soon as I get those, we'll

18   schedule an order, and this is pulled as of this morning.

19             MS. MCGRATH:  Thank you, your Honor.

20             MS. FERRARA:  Could we just have little bit more

21   head's up for the hearing?

22             THE COURT:  Yeah, sure.  What do you want, two

23   weeks, something like that?

24             MS. FERRARA:  Oh, no.  I mean if we can schedule it

25   now, then we can file it or -- I mean your Honor scheduled

1  this hearing on Friday afternoon for this morning, and --

2          THE COURT:  All right.  How about a month from now?

3          MS. FERRARA:  That's fine.

4          THE COURT:  Tish, give them a date a month from now

5  at -- you want to do it at 2:00 instead of 9:30?

6          MS. FERRARA:  Doesn't matter.  Whatever works for

7  your calendar.

8          THE COURT:  2:00 is probably better for me.

9          MS. MCGRATH:  Your Honor, if the first week of July

10  is available, that would work for me.  I'm actually leaving

11  the district --

12          THE COURT:  Yeah, I remember now.  So the first

13  week of July, Tish?  Does that work for you, Ms. Ferrara?

14          MS. FERRARA:  July 6, is that what we're talking

15  about?

16          THE COURT:  Does that work, July 6?

17          MS. MCGRATH:  That's fine.  Is that a Monday?

18          THE CLERK:  Yes.

19          MS. MCGRATH:  That's fine.

20          THE COURT:  Okay.  July 6 at 3:00.

21          MS. FERRARA:  Thank you.

22          THE COURT:  There's another case -- let me see if I

23  have a -- I have a Lexis cite for it.  Mr. Hermansen is here,

24  and he's passing notes to you, and I think he's going to

25  appeal this, but take a look at Morales v. District Court for

1   the Southern District of California, 2015 Lexis 65564 -- it

2   was just issued May 19 -- 2015 Lexis 65564.  Did you see it,

3   Mr. Hermansen?

4           MR. HERMANSEN:  No.  Is it yours?

5           THE COURT:  Yeah, it's the preliminary order I

6   issued in -- when I got what you called a "Kurt" motion to

7   change the docket.

8           MR. HERMANSEN:  Thanks a lot.

9           THE COURT:  You called it that.

10          MR. HERMANSEN:  No, I know.  My motion was Kurt,

11  but you decided to send that to Lexis?

12          THE COURT:  I didn't.  They pick it up on their

13  own.  Okay.

14          MS. FERRARA:  Thank you, your Honor.

15          MS. MCGRATH:  Thank you, your Honor.

16      (The proceedings were concluded.)

17

18

19

20

21

22

23

24

25

## Certificate of Reporter

I hereby certify that I am a duly appointed, qualified, and acting Official Court Reporter for the United States District Court; that the foregoing is a true and correct transcript of the proceedings had in the mentioned cause on the date or dates listed on the title page of the transcript; and that the format used herein complies with the rules and requirements of the United States Judicial Conference.

Dated June 16, 2015 at San Diego, California.

/s/ Debra M. Henson  (electronic)
Debra M. Henson
Official Court Reporter