<pre>
           UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF CALIFORNIA

    HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING


UNITED STATES OF AMERICA,          )
                                   )
             PLAINTIFF,            )   CASE NO. 3:12CR00768-LAB
                                   )
        VS.                        )
                                   )   SAN DIEGO, CALIFORNIA
VIRGINIA MADRID,                   )   SEPTEMBER 17, 2012
                                   )   9:30 A.M.
             DEFENDANT.            )
_____)


                REPORTER'S TRANSCRIPT

               SENTENCE WITH PSR


APPEARANCES:

FOR THE GOVERNMENT:        LAURA E. DUFFY, U.S. ATTORNEY
                           BY:  TARA K. MCGRATH, ESQ.
                           ASSISTANT U.S. ATTORNEY
                           880 FRONT STREET
                           SAN DIEGO, CA 92101


FOR THE DEFENDANT:         LAW OFFICES OF JAMI FERRARA
                           BY: JAMI L. FERRARA, ESQ.
                           964 FIFTH AVE, STE. 335
                           SAN DIEGO, CA 92101




COURT REPORTER:            EVA OEMICK
                           TEL: (619) 615-3103
</pre>

1    <u>SAN DIEGO, CALIFORNIA - MONDAY, SEPTEMBER 17, 2012, 9:30 A.M.</u>

2            THE CLERK:  NO. 6, 12CR00768, UNITED STATES OF

3    AMERICA VERSUS VIRGINIA MADRID.

4            COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

5    RECORD.

6            MS. FERRARA:  GOOD MORNING, YOUR HONOR.

7            JAMI FERRARA ON BEHALF OF MS. MADRID.

8            MS. MCGRATH:  GOOD MORNING, YOUR HONOR.

9            TARA MCGRATH ON BEHALF OF THE UNITED STATES.

10           THE COURT:  MS. MCGRATH, WE HAVE SOME FILINGS HERE,

11   AND I HAVEN'T SIGNED OFF ON ANY OF THIS.  LET ME TELL YOU WHAT

12   MY POLICY IS WHICH TRACKS THE NINTH CIRCUIT LAW.

13           A MOTION FOR THE DOWNWARD DEPARTURE MUST BE PUBLICLY

14   FILED.  PERIOD.  I AM NOT GOING TO FILE A MOTION FOR DOWNWARD

15   DEPARTURE UNDER SEAL.

16           LIKEWISE, A SENTENCING SUMMARY CHART WITH THE

17   GOVERNMENT'S RECOMMENDATION MUST BE PUBLICLY FILED.  I AM NOT

18   GOING TO FILE IT UNDER SEAL.  I AM NOT GOING TO ACCEPT ONE

19   THAT DOESN'T INCLUDE THE GOVERNMENT'S RECOMMENDATION.

20           NOW, IF THERE ARE REASONS THAT YOU THINK ARE

21   CONFIDENTIAL SUPPORTING THE MOTION FOR DOWNWARD DEPARTURE, YOU

22   MAY FILE A REQUEST TO HAVE THAT SEALED.  BUT THE MOTION ITSELF

23   AND THE GOVERNMENT'S RECOMMENDATION ARE MATTERS OF PUBLIC

24   RECORD.  SO I HAVE THOSE HERE.  I RETURN THE FILINGS TO YOU

25   BECAUSE THERE WAS A BLANK SPOT IN THAT SENTENCING SUMMARY

1 CHART AS TO THE GOVERNMENT'S RECOMMENDATION.

2      MS. MCGRATH:  YOUR HONOR, I HAVE MY PUBLICLY FILED

3 SENTENCING SUMMARY CHART WITH MY RECOMMENDATION IN THAT

4 PUBLICLY FILED 5K.  I DID --

5      THE COURT:  DOES IT HAVE THE NUMBER ON IT?  BECAUSE

6 I GOT A COUPLE OF ITERATIONS TO THIS AND CAME BACK AND FORTH,

7 AND MY JUDICIAL ASSISTANT SAID NOW IT'S MISSING THE

8 GOVERNMENT'S RECOMMENDATION.  AT ONE POINT THERE WAS A REQUEST

9 TO SEAL THE SUPPLEMENTAL MOTION FOR DOWNWARD DEPARTURE.  THE

10 MOTIONS THEMSELVES I AM NOT GOING TO SEAL.

11      MS. MCGRATH:  I HAVE DONE THIS BEFORE YOUR HONOR

12 SEVERAL TIMES.  I DID IT THIS WAY.  I DID IT THIS TIME THE

13 EXACT WAY I HAVE DONE IN THE PAST, YOUR HONOR.  I HAVE DONE

14 WITH THE COURT'S INSTRUCTION TO BE FILED IN THE PUBLIC RECORD.

15 SO ON THE 13TH OF THIS MONTH I FILED THE 5K MOTION ON THE

16 PUBLIC RECORD.  IT IS DOCUMENT NUMBER 35.  AND THEN ON THE

17 10TH BEFORE THAT, I FILED A SENTENCING SUMMARY CHART, DOCUMENT

18 NUMBER 34.

19      THE COURT:  LET ME RETURN THESE TO YOU THEN, BECAUSE

20 I HAVE ONE SAYING "UNITED STATES MOTION TO SEAL ITS

21 SUPPLEMENTAL MOTION FOR DOWNWARD DEPARTURE."  I WOULDN'T SIGN

22 THAT.

23      AND THEN HERE IS ANOTHER ONE "SUPPLEMENTAL MOTION

24 FOR DOWNWARD DEPARTURE REQUEST TO SEAL."  I WOULDN'T SIGN THAT

25 EITHER.

1          MS. MCGRATH:  YOUR HONOR, THIS IS THE MOTION THAT

2    CONTAINS THE INFORMATION THAT CANNOT GO IN THE PUBLIC RECORD.

3          THE COURT:  THAT'S THE DECLARATION, THEN?

4          MS. MCGRATH:  YES, YOUR HONOR.  AND THIS IS WHAT I

5    PROVIDED TO THE COURT.

6          THE COURT:  MAYBE THE CONFUSION WAS HOW IT WAS

7    DENOMINATED AS A MOTION RATHER THAN THE DECLARATION IN SUPPORT

8    OF THE MOTION.  I'LL SEAL THE DECLARATIONS WHEN THERE IS GOOD

9    CAUSE SHOWN, BUT NOT THE MOTION ITSELF.

10         MS. MCGRATH:  SO AT THIS POINT THE UNITED STATES

11   CAN'T GO FORWARD UNLESS THE COURT CAN CONSIDER THE INFORMATION

12   CONTAINED THERE.

13         THE COURT:  I LOOKED AT IT.  I HAVE READ ALL OF IT.

14   I AM WILLING TO CONSIDER IT.  IT'S JUST THE PUBLIC RECORD HAS

15   TO CONTAIN AN ACKNOWLEDGEMENT THAT THE GOVERNMENT HAS ASKED

16   FOR REDUCTION OF SENTENCE AND WHAT THE GOVERNMENT'S

17   RECOMMENDATION IS.  AND WITH THOSE THINGS, LIKE I SAID, THE

18   REASONS FOR IT.

19         I UNDERSTAND SOMETIMES THERE ARE REASONS WHY YOU

20   WOULDN'T WANT TO DISCLOSE, WHY YOU ARE MAKING THE REQUEST.

21   AND IF GOOD CAUSE IS SHOWN, I'LL SEAL THOSE.  BUT I HAVE READ

22   THEM.  I JUST THINK THAT THEY ARE NOT CORRECTLY DENOMINATED

23   BECAUSE THEY TALK ABOUT A MOTION FOR 5K, A SUPPLEMENTAL MOTION

24   FOR 5K, NOT A DECLARATION.

25         MS. MCGRATH:  IF I MAY, YOUR HONOR, JUST TO CLARIFY

1    FOR THE COURT, THIS IS THE EXACT SAME MANNER I HAVE DONE IT IN

2    THE PAST.  I WILL CERTAINLY GO FORWARD DOING IT DIFFERENTLY

3    BASED ON THE COURT'S INSTRUCTION TODAY, BUT I DO WANT TO MAKE

4    SURE I AM CLEAR THAT THE COURT WANTS THIS TO BE CALLED A

5    DECLARATION.

6        THE COURT:  YES, I WANT IT TO BE CALLED A

7    DECLARATION, AND THAT'S WHAT I'LL SEAL, BUT THE MOTION ITSELF,

8    I THINK, NEEDS TO BE PUBLICLY FILED.  IT DOESN'T MAKE ANY

9    SENSE, BECAUSE YOU HAVE GOT TO COME IN AND ADVOCATE THE

10   SENTENCE HERE IN OPEN COURT.  IT'S NOT A SECRET.  WE DON'T

11   GIVE THE SONIC SIGNS TO EACH OTHER AS TO WHAT THE SENTENCE

12   WILL BE SO NOBODY KNOWS.  THERE IS NO REASON THOSE DOCUMENTS

13   SHOULD NOT BE FILED PUBLICLY.  I THINK THEY SHOULD BE.  I

14   THINK THEY ARE REQUIRED TO BE.

15       BUT I HAVE READ THE SUBSTANCE OF IT, AND FRANKLY, I

16   AM PREPARED TO FOLLOW THE RECOMMENDATION OF THE UNITED STATES

17   INSOFAR AS THE DEPARTURE IS CONCERNED.

18       SO I HAVE READ HER DOCUMENTS, EVEN THOUGH THERE WAS

19   A PROBLEM WITH HOW THEY WERE TITLED AND I HAVE ACCEPTED THEM

20   FOR FILING.

21       I HAVE THE MOTION, THE SUPPLEMENTAL MOTION.  I HAVE

22   YOUR SENTENCING MEMORANDUM.  I HAVE READ THE PRESENTENCE

23   REPORT.

24       HAVE YOU GONE OVER THIS WITH YOUR CLIENT?

25       MS. FERRARA:  I HAVE, YOUR HONOR.

1          THE COURT:  AND THEN BOTH SIDES HAVE FILED

2     SENTENCING SUMMARY CHARTS.

3          IS THERE ANYTHING ELSE, MS. FERRARA, THAT I SHOULD

4     HAVE LOOKED AT?

5          MS. FERRARA:  NO, YOUR HONOR.  I THINK THAT YOU HAVE

6     REVIEWED EVERYTHING THAT WE WANTED YOU TO REVIEW.  I DO HAVE

7     SOME ARGUMENTS I'D LIKE TO MAKE.

8          THE COURT:  OF COURSE, AND I'LL HEAR FROM YOU, BUT I

9     WANT TO GET SOME OF THE TECHNICAL ASPECTS OF THIS OUT OF THE

10    WAY FIRST.

11         IS THE AGREEMENT THAT THE STARTING OFFENSE LEVEL,

12    THE AMOUNT OF NARCOTICS INVOLVED, IS 38?  THAT'S WHAT THE

13    SENTENCING SUMMARY CHARTS REFLECTED, ALTHOUGH THE PROBATION

14    REPORT SAYS 36.  I CHECKED IN THE GUIDELINES.  IT LOOKS LIKE

15    THE PARTIES' ESTIMATE WAS CORRECT: 169,000 KILOS.

16         MS. FERRARA:  WE AGREE THAT IT'S A 38, YOUR HONOR.

17    THE PROBATION REPORT WAS PREPARED BEFORE THE DEA7 WAS

18    AVAILABLE.

19         THE COURT:  THEN THAT LEADS TO ANOTHER PROBLEM,

20    BECAUSE THERE IS 8.4 KILOS OF METHAMPHETAMINE.  THIS IS A

21    BORDER CROSSING CASE.  THERE IS A PLUS TWO FOR IMPORTING

22    METHAMPHETAMINE WHICH PROBATION PICKS UP AND IS IGNORED IN THE

23    SENTENCE CALCULATIONS OF THE PARTIES.

24         MS. FERRARA:  IT'S NOT IGNORED IN MY CALCULATIONS,

25    BECAUSE I AM ASKING FOR MINOR ROLE, YOUR HONOR.  I UNDERSTAND

1  THAT YOUR HONOR MAY NOT AGREE WITH THAT.

2          THE COURT:  WE CAN TALK ABOUT THAT, BUT I HAVE TO

3  GET THE UPWARD ADJUSTMENTS FIRST.

4          MS. MCGRATH, WHY WAS THAT OMITTED HERE?  SHE HAD 8.4

5  KILOS OF METHAMPHETAMINE AND IT'S A CROSSING CASE, AND THE

6  GUIDELINES SAY THAT IF YOU IMPORT METHAMPHETAMINE, IT'S A PLUS

7  TWO.

8          MS. MCGRATH:  THAT'S CORRECT, YOUR HONOR.  AS PART

9  OF OUR PLEA AGREEMENT WE AGREED TO EMPLOY THAT PLUS TWO, AND

10  IN THAT CASE INVOLVED THE FACTS AND I DID NOT RECOMMEND IT.

11          THE COURT:  I DON'T UNDERSTAND.  WHAT DO YOU MEAN?

12          MS. MCGRATH:  YOUR HONOR, I CHOSE NOT TO RECOMMEND

13  THAT PLUS TWO APPLY BECAUSE I HAD A VERY DIFFICULT TIME WITH

14  HER CASE IN TERMS OF WHETHER OR NOT TO RECOMMEND MINOR ROLE

15  FOR HER.  AND SO, FRANKLY, YOUR HONOR --

16          THE COURT:  I AM NOT SURE THAT YOU CAN DO THAT.

17  THAT'S LIKE SAYING I CHOSE TO START AT 35 RATHER THAN 38.  I

18  HAVE IGNORED PROVISIONS OF THE GUIDELINES THAT ARE SUPPOSED TO

19  APPLY.

20          MS. MCGRATH:  IN SOME OF OUR PLEA AGREEMENTS, YOUR

21  HONOR, WE DON'T AGREE TO EMPLOY THAT PLUS TWO IF MINOR ROLE IS

22  NOT GIVEN.

23          THE COURT:  I DON'T THINK IT'S A DISCRETIONARY ONE,

24  THOUGH.  I THINK IT'S THE PROPER CALCULATION OF THE

25  GUIDELINES.  AS I SAID, IT'S TO ME FUNDAMENTAL.  IT'S NO

1    DIFFERENT THAN SAYING, WELL, ARBITRARILY I AM GOING TO START

2    AT A 33 RATHER THAN AT 38 ON THIS.  YOU BELIEVE YOU HAVE

3    DISCRETION?

4             MS. MCGRATH:  YOUR HONOR, I DO BELIEVE WE HAVE

5    DISCRETION AT THE PLEA AGREEMENT STAGE.  AT THIS POINT IN

6    LIGHT OF ALL OF HER -- ALL THE INFORMATION INVOLVED IN THIS

7    CASE AT THE TIME THAT I FILED THE SENTENCING RECOMMENDATION

8    AND BECAUSE OF THE FACTS INVOLVED WITH THE MINOR ROLE

9    RECOMMENDATION, I DECIDED TO GO FORWARD ON JUST THE 38.

10            THE COURT:  LET ME MAKE CLEAR WHAT MY FINDING IS ON

11   THIS.  I AM NOT NECESSARILY DISAGREEING WITH THE BOTTOM LINE

12   HERE ON THE RECOMMENDATION, BUT I DON'T THINK IT'S A PROPER

13   WAY OF CALCULATING THE GUIDELINES AND SAY WE ARE GOING TO

14   IGNORE A PROVISION THAT OTHERWISE APPLIES.  PROBATION HAS THAT

15   RIGHT.  SO I THINK THE PLUS TWO APPLIES, AND STARTING OFFENSE

16   LEVEL IS 40.  WHEREVER WE GO FROM THERE IS ANOTHER QUESTION.

17   BUT I THINK THE STARTING OFFENSE LEVEL IS 40.

18            YOU DISAGREE WITH THAT?

19            MS. FERRARA:  I DISAGREE WITH THAT, BECAUSE I THINK

20   SHE QUALIFIES FOR MINOR ROLE.  YOU SHOULDN'T APPLY THE PLUS

21   TWO, BUT WHETHER OR NOT THE GOVERNMENT HAS THE DISCRETION TO

22   OMIT THAT, I'D RATHER NOT TAKE A POSITION ON IT.  I UNDERSTAND

23   WHAT YOUR HONOR IS SAYING, AND I UNDERSTAND WHAT THE

24   GOVERNMENT IS SAYING.

25            THE COURT:  WELL, YOU DON'T DISAGREE THAT THE

1  STARTING OFFENSE LEVEL IS WHAT IT IS.  THAT DOESN'T AFFECT

2  YOUR ABILITY TO ASK FOR DOWNWARD ADJUSTMENTS FROM THE STARTING

3  OFFENSE LEVEL.  BUT WE FIGURE WHATEVER THE STARTING OFFENSE

4  LEVEL IS FIRST, AND THEN I TURN TO THE DOWNWARD ADJUSTMENTS

5  AND DEPARTURES TO GET TO A FINAL GUIDELINES RANGE; RIGHT?

6       MS. FERRARA:  THAT'S CORRECT.

7       THE COURT:  SO I FIND IT'S 40.  I THINK THE

8  PROBATION REPORT WAS WRONG IN SAYING IT'S 36.  IT IS ACTUALLY

9  38.  I FIND THAT THE PLUS TWO DOES APPLY BECAUSE OF

10 METHAMPHETAMINE.

11      NOW, I AM HAPPY TO HEAR FROM YOU WHY YOU BELIEVE IT

12 IS A MINOR ROLE.

13      MS. FERRARA:  YOUR HONOR, MS. MADRID WAS INVOLVED IN

14 THIS CASE AS SOMEONE WHO WAS HIRED TO CROSS METHAMPHETAMINE,

15 IN THIS CASE COCAINE, ACROSS THE BORDER.  AS IN THE MEETINGS

16 WHICH THE GOVERNMENT FACT CAME OUT SUPPORTING THAT SHE WAS

17 APPROACHED BY OTHER PEOPLE; SHE HAD NO FINANCIAL INTEREST IN

18 IT WHATSOEVER.  THE GOVERNMENT WAS ABLE TO CONFIRM ALMOST

19 EVERYTHING THAT MS. MADRID PROVIDED TO THE GOVERNMENT.  AND

20 SHE -- AND THE GOVERNMENT WAS ABLE TO ASCERTAIN WHO SOME OF

21 THE OTHER ACTORS IN THIS CASE WERE AND WAS ABLE TO MAKE AN

22 ARREST BASED ON THAT INFORMATION.

23      THE COURT:  ISN'T THAT ALL PART OF THE REASON FOR

24 THE 5K?

25      MS. FERRARA:  IT IS, BUT I THINK IT DOES SUPPORT THE

1   FACT THAT SHE IS A MINOR PARTICIPANT UNDER THE CASE LAW.  AND

2   I UNDERSTAND -- I THINK SOMETIMES I UNDERSTAND YOUR POSITION

3   AS TO WHAT IS MINOR ROLE IS AND WHAT ISN'T MINOR ROLE, AND

4   JUST BY VIRTUE OF CROSSING THE BORDER THAT THAT IS NOT IN YOUR

5   MIND A MINOR ROLE.

6           THE COURT:  NO, THAT'S NOT MY POSITION.  MY POSITION

7   IS THAT IT ISN'T INEXORABLY A MINOR ROLE JUST BECAUSE YOU ARE

8   DRIVING A CAR AND YOU ARE A SO-CALLED COURIER.  I THINK IF

9   THAT WAS THE CASE, WE'D HAVE A LESSER INCLUDED OFFENSE THAT

10  SAID IMPORTING MARIJUANA WHILE A COURIER OR IMPORTING DRUGS

11  WHILE A COURIER.

12          THERE IS A MENTALITY HERE THAT WHILE I AM JUST

13  DRIVING THE CAR ACROSS, THEN I AUTOMATICALLY AM ENTITLED TO

14  MINOR ROLE.  I DON'T SUBSCRIBE TO THAT MENTALITY.  APPARENTLY,

15  THE NINTH CIRCUIT DOESN'T EITHER.  THERE IS A PUBLISHED CASE

16  FAIRLY RECENT THAT SAYS NOT THE TALE OF THE TAPE OR A

17  CONSTELLATION OF FACTORS.

18          HERE, MS. FERRARA, WHAT'S TROUBLING TO ME IS THAT

19  SHE ADMITTED THAT SHE HAS DONE IT ON SIX PRIOR OCCASIONS.  I

20  HAVE A VERY DIFFICULT TIME RECONCILING HOW SOMEONE WHO HAS

21  REPEATEDLY SMUGGLED DRUGS INTO THE UNITED STATES CAN BE SAID

22  TO HAVE A MINOR ROLE.  WHAT WAS THE PERIOD OF TIME OVER WHICH

23  SHE WAS SMUGGLING ON THESE SIX PRIOR OCCASIONS?

24          MS. FERRARA:  OVER APPROXIMATELY A SIX-MONTH PERIOD,

25  YOUR HONOR.

1    THE COURT:  SEE, THERE IS CURRENCY.  SHE IS TRUSTED

2  BY THIS ORGANIZATION.  SHE IS BACK AND FORTH.  THE LEGAL

3  STANDARD HERE IS MEANINGFUL.  I HAVE TO FIND BY A

4  PREPONDERANCE OF EVIDENCE THAT SHE IS SIGNIFICANTLY LESS

5  CULPABLE THAN THE AVERAGE PARTICIPANT.  IT'S BEEN USEFUL FOR

6  ME IN THE PAST TO TRY TO UNDERSTAND EXACTLY WHAT THAT MEANS TO

7  ENVISION A SCALE OF CULPABILITY LIKE THE LADDER, AND AT THE

8  TOP ARE THE PEOPLE THAT OWN THE DRUGS AND CALLING THE SHOTS,

9  AND I GET THAT.  SHE IS NOT AT THE TOP.  I UNDERSTAND THAT.

10    BUT UNFORTUNATELY FOR HER, THAT'S NOT THE

11  ARTICULATION OF THE STANDARD.  THE STANDARD SAYS SIGNIFICANTLY

12  LESS CULPABLE THAN THE AVERAGE PARTICIPANT WHICH, USING MY

13  LADDER ANALOGY WITH WHETHER IT'S SOMEWHERE IN THE MIDDLE IF

14  YOU ARE AN AVERAGE PARTICIPANT.  AND SHE HAS GOT TO BE

15  SIGNIFICANTLY LESS CULPABLE THAN THAT.  TO MY WAY OF THINKING

16  WOULD PUT HER NEAR THE BOTTOM OF THE LADDER.

17    I DON'T KNOW HOW IT CAN BE SAID SOMEBODY WHO

18  SMUGGLES DRUGS ON MULTIPLE OCCASIONS OVER SIX MONTHS AND IS

19  SMUGGLING CURRENCY CAN BE NEAR THE BOTTOM OF THE LADDER IN THE

20  ORGANIZATION.  I JUST DON'T BELIEVE THAT.  I DON'T THINK IT'S

21  RATIONAL.

22    MS. FERRARA:  YOUR HONOR, THE CURRENCY WAS JUST A

23  STATEMENT THAT SHE MADE.  THAT WAS HER INITIAL STATEMENT AT

24  THE TIME OF HER ARREST WHEN SHE WAS DENYING KNOWLEDGE.

25    THE COURT:  WAS IT EXCLUSIVELY DRUGS?

1    MS. FERRARA:  IT WAS EXCLUSIVELY DRUGS.  AND I KNOW

2  THAT IS SOMETHING THAT DOESN'T NECESSARILY ADVANCE THE BALL IN

3  MY CASE.

4    WHAT I'D SAY ON BEHALF OF MS. MADRID IS SIX TIMES

5  OVER A PERIOD OF SIX MONTHS IS NOT A TRUSTED IMPORTANT MEMBER

6  OF A CARTEL MAKE.  I MEAN, SHE IS SOMEONE WHO -- SURE, SHE

7  ADMITTED IT.  SHE DID IT MORE THAN ONCE.  SHE DID IT SIX

8  TIMES, BUT OVER A SIX-MONTH PERIOD.  IF SHE WAS THAT GOOD AND

9  SHE WAS THAT IMPORTANT TO THIS ORGANIZATION, THEY WOULD HAVE

10  HAD HER CROSSING A LOT.  THEY WOULD HAVE DOING HER A LOT MORE.

11  THEY WOULD HAVE HAD HER KNOWING A LOT.

12    THE COURT:  I GUESS IT'S HOW WE REGARD THE QUANTITY

13  AND THE SUBSTANCE SHE HAD ON THIS OCCASION.  I THINK IT IS

14  PRETTY SIGNIFICANT.  SHE HAD ALMOST 20 POUNDS OF

15  METHAMPHETAMINE, ALMOST?

16    MS. FERRARA:  YES, IT WAS SIGNIFICANT, YOUR HONOR.

17  I UNDERSTAND THAT.

18    THE COURT:  AND FIVE KILOS -- 2.3 KILOS, OVER FIVE

19  POUNDS OF COCAINE.  WHAT'S THE STREET VALUE OF THOSE TWO DRUGS

20  TOGETHER?  HUNDREDS OF THOUSANDS OF DOLLARS?

21    SEE, I MAKE THE LOGICAL ASSUMPTION, MS. FERRARA,

22  THAT THIS IS PROBABLY NOT DIFFERENT FROM THE OTHER TRIPS THAT

23  SHE MADE; THAT THEY WERE PROBABLY GIVING HER A LIKE DRUG AND A

24  LIKE AMOUNT.  MAYBE NOT, BUT LOGICAL TO ASSUME THAT.

25    I TAKE YOUR POINT IF THIS IS A SINGLE POUND OF

1  MARIJUANA AND IT WAS LIKE A TEST OR SOMETHING.  I JUST -- I

2  DON'T SEE THAT.  THIS HAS ALL THE EARMARKS OF SOMEBODY WHO IS

3  TRUSTED BY THE ORGANIZATION.  THEY ARE GIVING HER HUNDREDS OF

4  THOUSANDS OF DOLLARS WORTH OF PRODUCT, AND SHE IS CROSSING IT

5  MULTIPLE TIMES.  IT BENDS THE WORD "MINOR" TO SAY HER

6  PARTICIPATION WAS MINOR.  IT JUST DOES.  IT IS NOT A FAIR

7  CHARACTERIZATION OF THE OFFENSE.  IF THERE IS SOMETHING I

8  MISSED IN THIS OR THERE IS SOME OTHER FACTS YOU WANT ME TO

9  CONSIDER, BUT I JUST DON'T SEE IT.

10         NOW, AGAIN, THE GOVERNMENT HAS ASKED FOR A DIFFERENT

11  TYPE OF RELIEF.  I AM PREPARED TO GRANT THAT RELIEF, BUT I

12  DON'T SEE THIS AS A MINOR ROLE CASE.  I JUST DON'T.

13         MS. FERRARA:  I AM WILLING TO SUBMIT, YOUR HONOR.  I

14  MEAN, IT'S AN ARGUMENT THAT I AM COMPELLED TO MAKE, I DO

15  BELIEVE, AND I UNDERSTAND YOUR POSITION.

16         THE COURT:  ON THIS CASE, WITH ALL RESPECT TO THE

17  POSITION, THE GOVERNMENT HASN'T RECOMMENDED MINOR ROLE IN THIS

18  CASE EITHER; RIGHT?

19         MS. MCGRATH:  NO, YOUR HONOR, WE DIDN'T.

20         THE COURT:  I DON'T FIND IT HERE.  I AM HAPPY TO

21  HEAR FROM YOU GENERALLY.  SHE IS NOT SAFETY-VALVE ELIGIBLE;

22  CORRECT?  SHE IS IN CRIMINAL HISTORY CATEGORY II?

23         MS. MCGRATH:  SHE IS NOT SAFETY-VALVE ELIGIBLE.  NO,

24  YOUR HONOR.

25         THE COURT:  AS I UNDERSTAND, SHE HAS GOT A PRIOR FOR

1    TRANSPORTING MARIJUANA IN 2007, PRIOR DRUG CASE INVOLVING THE

2    BORDER.

3            AS I UNDERSTAND THIS, MS. FERRARA, I AM PREPARED TO

4    GRANT THE GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE.  HOW

5    MANY MONTHS DID YOU CONTEMPLATE IN YOUR MOTION?

6            MS. MCGRATH:  YOUR HONOR, I BELIEVE IT WAS 43 IS

7    WHAT I ASKED FOR.

8            THE COURT:  43 MONTHS OFF.  SO I AM PREPARED TO

9    GRANT THAT REDUCTION.  THEN AS I UNDERSTAND IT, MS. FERRARA,

10   IN CASES LIKE THIS WHERE A PERSON IS NOT SAFETY-VALVE

11   ELIGIBLE, THE ONLY APPLICATION THAT THE 3553 FACTORS HAS AFTER

12   I GRANT A 5K FOR COOPERATION IS TO DETERMINE WHETHER THE

13   SENTENCE SHOULD GO BACK UP AS A RESULT OF AGGRAVATION, NOT

14   FARTHER DOWN.  SO THAT'S HOW I THINK THE GUIDELINES WORK IN

15   THIS CASE.  I AM HAPPY TO HEAR FROM YOU ABOUT THE ULTIMATE --

16   WHAT YOU THINK THE ULTIMATE SENTENCE SHOULD BE.

17           MS. FERRARA:  THAT'S CORRECT.  I PERSONALLY -- MY

18   REQUEST WOULD BE FOR YOU TO VALUE THE GOVERNMENT'S 5K MOTION

19   GREATER THAN WHAT THE GOVERNMENT HAS RECOMMENDED.  IT IS A

20   GOOD RECOMMENDATION.

21           THE COURT:  I DON'T WANT TO DO THAT.  I DON'T WANT

22   TO STEP ON ANYBODY'S TOES.  I HAVE AN EXPERIENCED PROSECUTOR

23   WHO SAT FACE TO FACE WITH THE DEFENDANT, HOW MANY TIMES?

24           MS. FERRARA:  TWO.

25           THE COURT:  AND SO SHE MAKES A JUDGMENT ABOUT WHAT

THE VALUE OF THE INFORMATION IS.  NOW, I ACCEPT WHAT I HAVE

READ, WHAT SHE TELLS ME, AND HER EVALUATION SEEMS ALL

REASONABLE TO ME.  IT WOULD BE, I THINK, VERY PRESUMPTUOUS OF

ME ABSENT SOME SHOCKING RECOMMENDATION LIKE ONLY A MONTH OFF

FOR THAT TO SAY, HEY, WAIT A MINUTE, I DISAGREE.  I AM GOING

TO PUT MY IMPRIMATUR ON THIS.  I DIDN'T SIT ACROSS FROM

MS. MADRID.  I DON'T HAVE THE CONTEXT AND THE BACKGROUND TO

SAY THAT COULD BE USEFUL OR NOT SO USEFUL INFORMATION WE

ALREADY KNOW OR MAYBE THIS WILL LEAD TO OTHER ARRESTS OR HELP

US ERADICATE THE FLOW OF METHAMPHETAMINE INTO THE UNITED

STATES.  SHE IS IN A PECULIAR SITUATION TO MAKE AN ASSESSMENT

TO EVALUATE ALL OF THAT.

SO I UNDERSTAND I HAVE DISCRETION TO DO IT, BUT THE

PROBLEM I AM HAVING IS JUST BECAUSE I DON'T LIKE THE LENGTH OF

THE SENTENCE, I AM NOT SUPPOSED TO VIEW IT ON THAT BASIS.  I

AM SUPPOSED TO SAY THAT THIS INFORMATION WAS REALLY MORE

VALUABLE THAN THE GOVERNMENT IS GIVING IT CREDIT FOR BEING,

AND I DON'T HAVE THE BASIS FOR SAYING THAT HERE.

MS. FERRARA:  CAN WE COME TO SIDEBAR AND OFFER A

LITTLE BIT MORE ABOUT --

THE COURT:  WELL, OKAY, I'LL HEAR FROM YOU HERE.

(SIDEBAR CONFERENCE REPORTED)

THE COURT:  I AM NOT TRYING TO GIVE YOU -- IT IS

VERY DIFFICULT FOR ME TO SAY, LOOK, THIS IS CHINTZY.

MS. FERRARA:  I AM NOT SAYING MS. MCGRATH IS CHINTZY

AT ALL.  ONE OF THE BASES OF THE FIRST MEETING, THEY WERE ABLE

TO IDENTIFY PEOPLE AND THEY BROUGHT IN SOME ARRESTS.  AT THE

SECOND MEETING, MS. MADRID, SHE WAS ABLE TO IDENTIFY SOME OF

THE PEOPLE.  THEY KNEW EXACTLY WHOM SHE IS TALKING ABOUT.

THEY WERE ABLE TO MAKE AN ARREST WITHIN THE NEXT COUPLE OF

DAYS.

THE COURT:  IS SHE GOING TO BE EXPECTED TO TESTIFY?

MS. MCGRATH:  IT IS POSSIBLE.

THE COURT:  SO YOU CAN BRING A RULE 35.

MS. MCGRATH:  I DON'T EXPECT HER TO BE TESTIFYING.

IT IS WITHIN THE REALM OF POSSIBILITY WHICH I MENTIONED.

THE COURT:  SHE COULD FURTHER COOPERATE AND YOU

COULD BRING A RULE 35.

MS. MCGRATH:  WHEN I WAS LOOKING AT THE VALUE HOW

YOU PERCEIVED THIS, I LOOKED AT IT INDEPENDENT OF THE ULTIMATE

SENTENCE KNOWING YOU WERE OFTEN KIND OF DISAGREEING WITH THE

CALCULATIONS.  I WANTED TO CALCULATE THE AMOUNT OF TIME OFF

BASED ON WHATEVER STARTING POINT WE ARE AT.

THE COURT:  IF YOU WANT TO CHANGE YOUR

RECOMMENDATION, THAT'S FINE.  SHE IS, ACCORDING TO MY

CALCULATION, WITH CREDIT AND DEPARTURES 135 TO 160 MONTHS.  I

AM NOT GOING TO IMPOSE THE LOW END.  IF I TAKE 43 MONTHS OFF

OF THE 135, THE LOW END IS DOWN TO THE UPPER 80S.  WHAT WAS

YOUR RECOMMENDATION?

MS. MCGRATH:  78, YOUR HONOR.

1    THE COURT:  BUT I AM NOT NECESSARILY ON BOARD WITH

2  THAT.  THAT IS THE SIXTH TIME.  SHE HAS GOT A DRUG PRIOR IN

3  2007.  IT IS A MARIJUANA CASE.  I REALIZE THIS.  I THINK UNDER

4  3553(A) AFTER I GRANT A DEPARTURE THAT MAY BE IN ORDER.

5  THAT'S WHAT MY THINKING IS.

6    MS. FERRARA:  I WOULD ASK FOR YOU TO GO TO 78 AND

7  CONSIDER SOME OF MY RATIONALE JUST TO GET DOWN TO 125 AND TAKE

8  THE 43 OFF.

9    MS. MCGRATH:  I AM NOT OPPOSED TO THAT.

10    MS. FERRARA:  SINCE THAT I CAN ARGUE DOWN TO THE

11  FACTORS IN THIS CASE.  SO I ASK THAT YOU CONSIDER MY ARGUMENT

12  AND TAKE INTO CONSIDERATION THE 5(K) MOTION.

13    THE COURT:  I WILL DO THAT.  SEEMS TO ME IF SHE

14  CONTINUES TO COOPERATE AND GETS SOME ADDITIONAL TIME OFF.  I

15  DON'T WANT TO OVERSTATE IT.

16    MS. MCGRATH:  I AM PREPARED TO DO WHAT MS. MADRID IS

17  PREPARED TO DO.  IT IS UNDER THE CIRCUMSTANCES OF THAT CASE

18  LIKELY THE ONLY TIME WE WILL BE BEFORE THE COURT.

19    MS. FERRARA:  THERE HAS BEEN SOME CONSIDERABLE

20  DANGER TO HER.  HER HOUSE HAS BEEN SHOT.

21    THE COURT:  SHE SHOULDN'T BE IN THE DRUG CULTURE.

22                    (END OF SIDEBAR)

23    THE COURT:  I WILL TAKE INTO CONSIDERATION THE

24  INFORMATION THAT KIND OF EXPANDS ON WHAT WAS IN THE

25  DECLARATION THAT WAS JUST PROVIDED AT SIDEBAR.

1          NOW, WITHOUT OTHER INTERRUPTIONS, I AM HAPPY TO HEAR

2     FROM YOU, MS. FERRARA.

3          MS. FERRARA:  THANK YOU, YOUR HONOR.

4          YOUR HONOR, I WOULD FIRST LIKE TO POINT OUT THAT

5     MS. MADRID'S TWO DAUGHTERS, VANESSA AND RACHEL, ARE PRESENT IN

6     COURT TO SHOW THEIR SUPPORT FOR THEIR MOTHER.

7          YOUR HONOR, THE PORTRAIT I'D LIKE TO PAINT OF

8     MS. MADRID, APART FROM JUST THE WOMAN WHO SMUGGLED DRUGS INTO

9     THE UNITED STATES SIX OTHER TIMES, IS THE PORTRAIT OF A WOMAN

10    WHO WAS A GOOD MOM, A GOOD, HARD WORKING SINGLE MOM UNTIL

11    ABOUT 10 YEARS AGO, AND HER LIFE COMPLETELY FELL APART.

12         SHE WAS INJURED ON HER JOB.  SHE RECEIVED -- SHE

13    WENT ON A CARPAL TUNNEL SURGERY FOR HER HANDS, AND IT WAS

14    BOTCHED.  SHE LOST THE USE OF HER RIGHT HAND, AND AS A RESULT

15    OF THAT, SHE WAS UNABLE TO WORK.  AND THEN WITHIN A YEAR OR SO

16    OF THAT, SHE DEVELOPED THIS SYNDROME CALLED REFLEX DYSTROPHY

17    SYNDROME.  I RESEARCHED IT.  I LOOKED IT UP, AND I GAVE YOU

18    SOME OF THE INFORMATION.  IT IS AN INCREDIBLE AMOUNT OF PAIN.

19    THERE IS NO CURE.  AND IT DOESN'T GET BETTER.  IT GETS WORSE

20    OVER TIME.

21         SHE WAS ON A RIDICULOUS AMOUNT OF PAIN KILLERS, A

22    RIDICULOUS AMOUNT OF DRUGS.  HER HUSBAND OR HER BOYFRIEND SENT

23    ME A LIST OF THE NARCOTICS THAT SHE WAS TAKING: VICODIN,

24    TRAMADOL, TORADOL, ALPRAZOLAM (PHONETIC).  I MEAN, THINGS I

25    CAN'T EVEN PRONOUNCE, BUT CRAZY AMOUNTS OF NARCOTICS TO JUST

1    DULL THE PAIN THAT SHE WAS IN.  AND IT'S NOT JUST PAIN IN HER

2    HAND, IT'S PAIN THAT'S IN HER SKIN, IN HER BONES, IN HER

3    JOINTS.  SHE JUST -- HER LIFE JUST ENDED AT THAT POINT.  SHE

4    WAS JUST IN SO MUCH PAIN.  SHE COULDN'T WORK, SHE COULDN'T DO

5    ANYTHING.

6         THEN YOU MOVE ON FROM 2002 WHEN THAT ALL HAPPENED TO

7    2007 WHEN SHE MADE THIS COLOSSALLY STUPID MISTAKE TO ACCOMPANY

8    HER DAUGHTER ON A DRUG SMUGGLING, MARIJUANA SMUGGLING

9    VENTURE.

10        THE COURT:  ONE OF THESE DAUGHTERS?

11        MS. FERRARA:  NO, NO.  AND SHE HAD NEVER BEEN IN

12   TROUBLE BEFORE IN HER LIFE, NOTHING.  AND ONE OF HER

13   DAUGHTERS, HER ELDEST DAUGHTER, IS UNFORTUNATELY A DRUG

14   ADDICT, HAS HAD PROBLEMS FOR MANY YEARS.  IN A MISGUIDED SENSE

15   OF PROTECTION FOR HER DAUGHTER, SHE WAS A PASSENGER IN A

16   VEHICLE, AND SHE AGREED TO DO IT, AND SHE THOUGHT SHE COULD --

17   I DON'T KNOW -- HELP PROTECT HER KID.  IT WAS STUPID AND THAT

18   WAS SOMETHING THAT HAS RUINED HER LIFE EVEN MORE, BECAUSE NOW

19   WE STAND HERE AND YOU CAN'T GIVE HER LESS THAN 10 YEARS BUT

20   FOR THE GOVERNMENT'S MOTION.

21        I THINK THAT BUT FOR THAT, YOU MIGHT LOOK AT HER A

22   LITTLE BIT DIFFERENTLY, BECAUSE THEN YOU COULD CONSIDER ALL

23   THESE 3553(A) FACTORS, BECAUSE THIS IS NOT A BAD WOMAN.  SHE

24   HAS MADE HORRIBLE MISTAKES.

25        THE COURT:  IT'S CONFOUNDING TO ME THAT HAVING DONE

1  88 DAYS FOR DRUG SMUGGLING IN THE STATE SYSTEM IN 2007 THAT

2  SHE WOULD BLUNDER BACK INTO THIS AGAIN, AND IN SPADES, NOT

3  MARIJUANA, NOT A PASSENGER, BUT DRIVING A CAR WITH A VERY

4  ADDICTIVE AND VERY LARGE AMOUNT OF METHAMPHETAMINE AND

5  COCAINE.  I WOULD HAVE THOUGHT THAT -- SHE WAS 46 AT THE TIME

6  OF THE EARLIER ONE.  SHE IS 51 NOW.  I WOULD HAVE THOUGHT SHE

7  WOULD HAVE LEARNED HER LESSON FROM THAT.

8          MY EXPERIENCE, BY HUMAN NATURE AND MATURING IS THAT

9  AS YOU GET OLDER, YOU LEARN FROM MISTAKES AND YOU DON'T REPEAT

10  THEM.  SOMETIMES THAT'S NOT TRUE WITH YOUNGER PEOPLE, AND I

11  GET THAT.  I ADJUST APPROPRIATELY WITH YOUNG PEOPLE, BUT MY

12  GOODNESS.  BY THE TIME YOU ARE 46 AND YOU HAVE RAISED A FAMILY

13  AND YOU HAD A BAD EXPERIENCE LIKE THE ONE SHE WENT THROUGH IN

14  2007, I WOULD THINK YOU WOULD SAY NO MORE.  I AM NOT GOING TO

15  GET ANYWHERE NEAR THAT AGAIN, BECAUSE I DIDN'T LIKE BEING IN

16  JAIL FOR 88 DAYS OR EVEN 44 DAYS IF IT WAS HALF TIME THAT SHE

17  DID.

18          MS. FERRARA:  IF MS. MADRID WAS CLEAR HEADED AND NOT

19  SUFFERING FROM PROBLEMS THAT YOU AND I ARE NOT SUFFERING FROM,

20  I WOULD AGREE WITH YOU, YOUR HONOR.  BUT IN THE FIVE YEARS

21  SINCE THAT TIME OR THE FOUR YEARS SINCE THAT TIME, HER PAIN

22  INCREASED TO THE POINT WHERE HER FAMILY WAS CONCERNED ABOUT

23  HER MENTAL HEALTH, HER HUSBAND WAS CONCERNED.  HE WANTED HER

24  TO GO -- THEY ALL WANTED HER TO GO TO DETOX BECAUSE THEY WERE

25  JUST CONCERNED THAT SHE WAS IN A FOG ALL THE TIME.  SHE WAS

1   NOT THINKING CLEARLY.  AND THAT'S A COMBINATION OF ABUSING THE

2   PRESCRIPTION MEDS AND A COMBINATION OF JUST PAIN AND THE

3   SELF-WORTH AND EVERYTHING THAT HAD GOTTEN HER TO THE POINT IN

4   2011 WHERE SHE JUST -- I DON'T THINK SHE WAS THE SAME PERSON

5   THAT MADE THE DECISION IN 2007.  SHE CERTAINLY WASN'T THE SAME

6   PERSON THAT THESE YOUNG WOMEN KNEW IN 2001 AND 2002.

7            AND SO IF SHE WAS THAT PERSON, YOUR HONOR, I THINK

8   YOU HAVE EVERY RIGHT TO SAY WHY DIDN'T SHE LEARN?  WHAT ON

9   EARTH WOULD MAKE HER DO THAT AGAIN?  WELL, A LOT OF THINGS

10  MADE HER DO THAT AGAIN, AND A LOT OF THINGS MADE HER NOT

11  COMPREHEND WHAT RISK SHE WAS LOOKING AT.  IT CERTAINLY DIDN'T

12  ENTER INTO HER MIND THAT IF SHE GOT CAUGHT THAT SHE'D BE

13  LOOKING AT 10 YEARS.

14           THE COURT:  DID SHE COLLECT DISABILITY BECAUSE OF

15  HER CARPAL TUNNEL?

16           MS. FERRARA:  YES, SHE GOT DISABILITY AND SSI.

17           THE COURT:  IT'S ACTUALLY LIKE A LIVE-IN BOYFRIEND,

18  NOT LEGALLY MARRIED?

19           MS. FERRARA:  COMMON LAW, RIGHT.

20           THE COURT:  COMMON LAW.  WAS HE EMPLOYED?

21           MS. FERRARA:  HE IS EMPLOYED, BUT AS I SAID IN MY

22  PAPERS, THE THIRD KIND OF NAIL IN THE COFFIN WAS WHEN HE GOT

23  DEPORTED IN 2008.  HE WAS HERE ON AN EXPIRED VISA.  HE GOT

24  DEPORTED, AND SO IN THAT TIME PERIOD WAS WHEN MS. MADRID

25  STARTED LIVING BETWEEN U.S. AND MEXICO AND WHEN SHE MET THE

1  PEOPLE IN MEXICO AND THINGS JUST KIND OF SPIRALED OUT OF

2  CONTROL.

3        THE COURT:  WERE YOU LIVING IN MEXICO AT THE TIME OF

4  THIS ACTIVITY?

5        THE DEFENDANT:  YES.

6        THE COURT:  ANYTHING ELSE, MS. FERRARA?

7        MS. FERRARA:  NO, YOUR HONOR.  I JUST ASK THAT THE

8  STARTING POINT BASED ON OUR CONVERSATION FOR YOU AS TO THE 5K

9  MOTION SHOULD BE 120.  I THINK THAT IS APPROPRIATE.  I

10 CERTAINLY WOULD ASK FOR A LOWER SENTENCE, BECAUSE I THINK

11 MS. MADRID IS DESERVING OF IT.  I WOULD ASK THAT YOU START AT

12 120.

13       THE COURT:  THANK YOU, MS. FERRARA.

14       MS. MADRID, I AM HAPPY TO HEAR FROM YOU.

15       THE DEFENDANT:  WELL, YOUR HONOR, I AM SORRY THAT I

16 MESSED UP.  THAT IS MY FAMILY ALSO.

17       THE COURT:  YES, I AM VERY SURPRISED.  I TAKE INTO

18 CONSIDERATION WHAT YOUR LAWYER SAID.  YOU WEREN'T THINKING

19 CLEARLY AND HAD A LOT OF MEDICATION.  YOU HAVE THOSE WONDERFUL

20 DAUGHTERS OUT HERE.  LOOK BEHIND YOU NOW.  THEY ARE GRIEVING

21 BECAUSE THERE IS NOTHING THEY CAN DO TO HELP YOU NOW, AND THEY

22 FEEL BAD THAT YOU ARE IN THIS POSITION.  THAT'S TERRIBLE.

23       IT'S A TERRIBLE SITUATION FOR EVERYONE.  I DON'T

24 TAKE ANY DELIGHT IN THIS, BUT YOU SHOULD KNOW BETTER.  YOU

25 SHOULD.  YOU WERE OLD ENOUGH TO KNOW BETTER, AND HAVING GONE

THROUGH AN EXPERIENCE LIKE THIS BEFORE, YOU SHOULD HAVE KNOWN

BETTER THAN TO GET BACK INVOLVED IN THIS.  I AM HEARING NOW

THAT YOU HAD SSI, YOU HAD SOME DISABILITY, SO YOU WEREN'T

DESTITUTE, AND YOU WERE LIVING IN MEXICO.  I AM NOT SURE I

UNDERSTAND --

THE DEFENDANT:  I WENT BACK AND FORTH WITH MY

KIDS.

THE COURT:  YES, BUT I MEAN, IT WASN'T -- I HEAR

PEOPLE FROM TIME TO TIME TO TELL ME -- AND I DON'T ACCEPT THIS

VERY OFTEN -- THEY SAY THIS WAS THE ONLY OPTION FOR ME TO DO

THIS BECAUSE I COULDN'T GET A JOB.

ONCE IN A WHILE SOMEBODY HAS A FAMILY MEMBER THAT'S

GOT CANCER AND THEY ARE DESPERATE OR SOMETHING LIKE THAT, THEN

MAYBE I CAN UNDERSTAND THE BAD JUDGMENT.  MOST OF THE REST OF

THE TIME I THINK YOU COULD HAVE FOUND A JOB SOMEWHERE.  YOU

COULD BEAT THE BUSHES AND FOUND SOMETHING, BUT THAT DOESN'T

EVEN CHARACTERIZE YOUR SITUATION BECAUSE YOU HAD INCOME COMING

IN.  I KNOW IT'S LESS EXPENSIVE TO LIVE IN TIJUANA WHERE YOU

WERE LIVING OR EVEN BACK AND FORTH, BUT THAT DOESN'T SOUND

LIKE THIS WAS --

THE DEFENDANT:  IT WAS FOR MY HUSBAND AND FOR MY

DAUGHTER.  I WAS TRYING TO HELP MY DAUGHTER AND MY HUSBAND.

THE COURT:  HOW SO?  WHAT WERE YOU GOING TO DO WITH

THE MONEY?

THE DEFENDANT:  TO GET HIS GREEN CARD BACK.

1          MS. FERRARA:  SHE WAS SAVING UP SO SHE COULD HIRE A

2    LAWYER AND TRY TO HELP HIM GET HIS GREEN CARD BACK.

3          THE COURT:  BUT THIS SITUATION, IT WAS JUST AN

4    EXPIRED GREEN CARD?  HE DIDN'T GET THROWN OUT FOR ANOTHER

5    REASON?

6          MS. FERRARA:  I DON'T KNOW THE EXACT DETAILS, BUT

7    WHAT THEY TOLD ME IS THAT HE HAD AN EXPIRED GREEN CARD.

8          THE COURT:  HE HADN'T BEEN CONVICTED OF ANY OTHER

9    CRIME?

10          THE DEFENDANT:  NO.

11          THE COURT:  WELL, OKAY.  I AM NOT SURE I GET THAT,

12    BECAUSE I AM NOT SAYING IT'S SIMPLE, BUT IT'S NOT DIFFICULT.

13    IT'S NOT LIKE YOU GOT TO GO THROUGH A LOT OF HOOPS BECAUSE A

14    PERSON HAS BEEN CONVICTED AND INS IS GOING TO LOOK BEYOND THE

15    SKY AT THE PERSON.

16          THE DEFENDANT:  HE HAD TO STAY OUT FOR 10 YEARS.

17          THE COURT:  BECAUSE IT EXPIRED AND HE REMAINED

18    AFTERWARDS?

19          MS. FERRARA:  HE NEEDED TO RAISE A COUPLE THOUSAND

20    DOLLARS.

21          THE COURT:  HOW MUCH WERE YOU GETTING PAID FOR EACH

22    TRIP?

23          THE DEFENDANT:  DEPENDS.

24          THE COURT:  HOW ABOUT THE FIRST SIX TIMES, HOW MUCH

25    DID YOU GET?

1          THE DEFENDANT:  WELL, IT WAS $2,500.

2          THE COURT:  SO AFTER THE FIRST TRIP THERE IS PLENTY

3     OF MONEY TO GET THE LAWYER AND GET THE GREEN CARD.

4          LOOK, I AM TRYING TO BE FAIR ABOUT THIS.  THIS ISN'T

5     JUST LIKE I ACCEPT EVERYTHING THAT'S SAID.  THAT'S SIX TRIPS,

6     WHAT IS THAT -- 13-, 14,000?

7          ANYWAY, MS. MSGRATH.

8          MS. MCGRATH:  YOUR HONOR, UNLESS THE COURT HAS ANY

9     QUESTIONS, I'LL SUBMIT ON THE PAPERS AND WHAT WAS SAID AT

10    SIDEBAR.

11         THE COURT:  THE COURT HAS TO CORRECTLY CALCULATE THE

12    GUIDELINES.  THAT IS THE STARTING POINT IN DETERMINING WHAT

13    THE APPROPRIATE SENTENCE IS.

14         HERE I FIND THAT THE BASE OFFENSE LEVEL, BASED ON

15    THE AMOUNT OF NARCOTICS AND AGREED TO BY THE PARTIES, IS A 38.

16    TWO POINTS ARE ADDED BECAUSE THE BULK OF THE NARCOTICS IN THIS

17    CASE WAS METHAMPHETAMINE.  AND PURSUANT TO 2D1.1(B)(5), TWO

18    LEVEL INCREASE IS APPLIED.

19         I DISAGREE WITH THE GOVERNMENT.  I DON'T FIND THAT

20    THAT'S A DISCRETIONARY GUIDELINE PROVISION WHERE THEY CAN

21    DECIDE TO BRING IT OR NOT.  THE PROPER CALCULATION OF THE

22    GUIDELINES RECOGNIZES THAT THE SENTENCING COMMISSION HAS

23    DETERMINED TWO LEVELS ARE ADDED WHEN THE SUBSTANCE IS

24    METHAMPHETAMINE.  THAT'S NOT DISCRETIONARY.

25         AS I SAID, IT'S NO DIFFERENT FROM THE GOVERNMENT

1    SAYING, WE DISAGREE, IT'S A 38.  WE CALL IT A 31.  I DON'T

2    THINK YOU GET TO DO THAT EITHER.  IT'S BEEN AN INCORRECT

3    APPLICATION OF THE GUIDELINES NOT TO APPLY THAT.  THAT'S MY

4    FINDING.

5         SO THE STARTING OFFENSE LEVEL UPWARD IS 40.  THREE

6    POINTS COME OFF FOR ACCEPTANCE.  I GRANT THE FOUR-POINT

7    DEPARTURE FOR FAST TRACK WHICH DROPS THIS DOWN TO A 33.

8         AND THE GUIDELINE RANGE IS 135 TO 168 MONTHS.

9    MS. FERRARA HAS ASKED ME TO CONSIDER ADDITIONAL BASES FOR

10   DEPARTURE, AND SHE HAS ADVOCATED THOSE IN HER SENTENCING

11   MEMORANDUM.  HER EFFORT IS TO GET THIS DOWN TO THE MANDATORY

12   MINIMUM BEFORE I CONSIDER THE ADDITIONAL DEPARTURE RECOMMENDED

13   BY THE GOVERNMENT UNDER 5K.

14        I HAVE LOOKED AT THOSE BASES FOR DEPARTURE, AND I

15   FIND THAT THEY ARE EITHER SUBSUMED WITHIN THE FOUR POINTS THAT

16   I HAVE TAKEN OFF FOR FAST TRACK OR THEY ARE SUBSUMED WITHIN

17   THE 5K.  SO I DECLINE TO DO THAT.

18        THE GOVERNMENT HAS RECOMMENDED A 43-MONTH

19   ADJUSTMENT.  AND FOR THE REASONS GIVEN BY MS. MCGRATH, I FIND

20   THAT THAT IS APPROPRIATE AND I GRANT IT.

21        MS. FERRARA HAS ASKED ME TO CONSIDER GIVING

22   ADDITIONAL CREDIT, BUT I AM RELUCTANT TO DO THAT, AND I FIND I

23   DON'T HAVE A BASIS FOR DOING IT HERE.  AS I SAID, I RESPECT

24   MS. MCGRATH.  I RESPECT HER EXPERIENCE.  SHE HAS GIVEN ME

25   COGENT REASONS WHY 43 MONTHS ARE APPROPRIATE FOR THE

1   COOPERATION PROVIDED BY MS. MADRID.  BUT I DON'T FIND THAT I

2   HAVE A BASIS FOR GOING BEYOND THAT.

3           SO WHEN I TAKE THE 43 MONTHS OFF, I AM AT 92 MONTHS.

4           THE PROBATION OFFICER:  YOUR HONOR?

5           THE COURT:  YES.

6           THE PROBATION OFFICER:  I THINK IF THE GUIDELINE

7   CALCULATION IS CATEGORY II, SHE IS 151 TO 188 MONTHS IN

8   CATEGORY II.

9           THE COURT:  OH, YES, I AM SORRY.  I GOT THE WRONG

10  CATEGORY THEN.

11          YES, YOU ARE RIGHT.  I APOLOGIZE.  I WAS LOOKING AT

12  CATEGORY I, 151 TO 188.  TAKING THE 43 FROM THE LOW END WOULD

13  PUT ME AT 108.  IS THAT WHAT YOU HAVE?

14          THE PROBATION OFFICER:  YES, YOUR HONOR.

15          THE COURT:  FOR PURPOSES OF THE GUIDELINES.

16          MS. FERRARA:  YOUR HONOR, CONSIDERING THAT

17  DIFFERENCE, WOULD YOU RECONSIDER MY FACTORS FOR DEPARTURE OR

18  3553(A) FACTORS?  108 MONTHS IS AN INCREDIBLE AMOUNT OF TIME

19  FOR THIS WOMAN, YOUR HONOR.  SHE HAS DONE EVERYTHING THAT SHE

20  CAN TO TRY TO WORK WITH THE GOVERNMENT.  WALKING IN, WE ARE

21  TALKING ABOUT 78 MONTHS, AND NOW WE ARE TALKING ABOUT 108.  I

22  UNDERSTAND WHERE YOU ARE COMING FROM, BUT 108 MONTHS IS SO, SO

23  MUCH, YOUR HONOR.

24          THE COURT:  IT'S A LONG TIME.  I GRANT YOU THAT.

25  IT'S DRIVEN IN PART BECAUSE SHE HAS GOT THIS PRIOR DRUG

1    OFFENSE FOR SMUGGLING DRUGS THROUGH THE SAME PORT OF ENTRY.

2          MS. FERRARA: I UNDERSTAND WHAT YOU ARE SAYING ARE

3    AGGRAVATING FACTORS, BUT THERE ARE CERTAINLY SOME MITIGATING

4    FACTORS IN THIS CASE. SHE IS SO MUCH DESERVING OF SOMETHING

5    LESS THAN 108 MONTHS.

6          THE COURT: HERE IS WHAT I'LL DO. I'LL RECONSIDER

7    THE ARGUMENTS THAT YOU HAVE MADE, MS. FERRARA.

8          I FIND IN ADDITION TO THE FAST TRACK AND THE 5K THAT

9    ADDITIONAL DEPARTURE OF 15 MONTHS ACCOUNTS FOR THE OTHER

10   FACTORS, DEPENDENCY ON DRUGS, ALTHOUGH IT'S ARGUABLE THAT

11   THAT'S NOT A MITIGATING FACTOR.

12         UNDER THE CIRCUMSTANCES OF THIS CASE, I'LL ACCEPT

13   THAT YOU SAID IT IMPAIRED HER JUDGMENT. SO I'D END UP AT 93

14   MONTHS. AN ADDITIONAL 15 MONTHS, I THINK, ACCOUNTS FOR THE

15   OTHER THINGS THAT YOU HAVE MENTIONED.

16         SO I GRANT THE DEPARTURE THAT YOU ASKED FOR TO THAT

17   EXTENT, TAKE INTO CONSIDERATION THE RESIDUAL FACTORS THAT YOU

18   HAVE MENTIONED IN YOUR MEMO AND YOU HIGHLIGHTED IN YOUR

19   ARGUMENT TODAY. 93 MONTHS. THAT'S THE -- WHAT I FIND TO BE

20   THE GUIDELINE.

21         NOW, I CHECKED WITH BOTH OF YOU, AND I THINK

22   MS. FERRARA ACKNOWLEDGED TO HER CREDIT THAT THE WAY THIS IS

23   SUPPOSED TO WORK IS THAT ONCE I HAVE REACHED THE BOTTOM POINT

24   IN APPLYING THE 5K THAT I ONLY LOOK TO THE 3553 FACTORS TO

25   DETERMINE WHETHER I SHOULD GO UP.

1          I HAVE REVIEWED ALL OF THOSE FACTORS.  THIS IS A

2     SERIOUS OFFENSE.  THE PENALTIES BESPEAK THE SERIOUSNESS OF IT.

3     IT'S AGGRAVATED THAT SHE DID IT MULTIPLE TIMES.  IT'S

4     AGGRAVATED THAT SHE HAS HAD A SIMILAR EXPERIENCE WITH THE DRUG

5     OFFENSE BEFORE.

6          NOT WITHSTANDING ALL OF THAT, I THINK THAT THE

7     SENTENCE OF 93 MONTHS IS SUFFICIENT BUT NOT GREATER THAN

8     NECESSARY TO ACCOUNT FOR THOSE AGGRAVATORS.  SO I DON'T FIND

9     ANY BASIS FOR GOING BACK UP FROM WHAT I FIND TO BE THE LOWEST

10    GUIDELINE LEVEL.

11          THE COURT DETERMINES THAT 93 MONTHS IS THE

12    APPROPRIATE SENTENCE IN THIS CASE.

13          THAT'S TO BE FOLLOWED BY FIVE YEARS OF SUPERVISED

14    RELEASE.  HERE ARE THE CONDITIONS, MS. MADRID, OF SUPERVISED

15    RELEASE.

16          YOU ARE NOT TO GO INTO MEXICO.  AND YOU DON'T HAVE

17    ANY REASON TO GO BACK THERE; RIGHT?  YOUR DAUGHTERS ARE HERE,

18    YOU CAN LIVE HERE IN THE UNITED STATES.

19          THE DEFENDANT:  MY HUSBAND IS THERE.

20          THE COURT:  WELL --

21          MS. FERRARA:  CAN IT BE WITH PERMISSION OF

22    PROBATION?

23          THE COURT:  WITH PERMISSION OF THE PROBATION

24    OFFICER, BUT I DON'T THINK IT SHOULD BE FOR MORE THAN 48 HOURS

25    AT A TIME.

1       LOOK, THE CIRCUMSTANCES HERE ARE THAT SHE SAYS,

2  WELL, WHILE I WAS IN MEXICO THAT I GOT IMPORTUNED TO DO THIS.

3  I WAS AROUND BAD INFLUENCES, AND THEY ARE THE ONES THAT PUT ME

4  UP TO THIS.  YOU ARE SHAKING YOUR HEAD NO, BUT THAT'S WHAT WAS

5  REPRESENTED TO ME THAT WHILE YOU WERE DOWN THERE, SOMEBODY

6  APPROACHED YOU AND SAID DO THESE THINGS.

7       I'LL GIVE THE PROBATION OFFICER DISCRETION UP TO 48

8  HOURS.  AND IT COULD BE THAT YOU'LL HAVE HIS SITUATION

9  STRAIGHTENED OUT AND BE ABLE TO COME BACK OVER HERE BY THE

10  TIME YOU GET OUT, SO MAYBE IT IS NOT GOING TO BE A PROBLEM.

11       I THINK IT'S A PROBLEM IF YOU ARE RESIDING IN

12  MEXICO, BECAUSE YOU ARE SUBJECT TO THE SAME TEMPTATIONS AND

13  PRESSURES THAT HAVE YOU HERE IN FRONT OF ME TODAY.

14       SHE IS TO PARTICIPATE IN A PROGRAM OF MENTAL HEALTH

15  TREATMENT INCLUDING TAKING ALL MEDICATIONS THAT ARE

16  PRESCRIBED.

17       SHE IS TO TELL THE PROBATION OFFICER ABOUT ALL

18  AUTOMOBILES SHE OPERATES OR HAS AN INTEREST IN; SHE MUST

19  SUBMIT TO A SEARCH OF HER HOUSE AND HER CAR AND HER PERSON BY

20  THE U.S. PROBATION OFFICER OR AT THE REQUEST OF ANY PEACE

21  OFFICER: STATE, FEDERAL, OR LOCAL.

22       I FIND THAT ADDITIONAL RESTRICTION ON HER FOURTH

23  AMENDMENT PROTECTION IS WARRANTED IN LIGHT OF THE FACT THAT

24  SHE HAS NOW BEEN TWICE CONVICTED OF DRUG SMUGGLING.

25       SO THE PERIOD OF SUPERVISION IS FIVE YEARS.  THE

1  DEFENDANT HAS PLED TO TWO COUNTS HERE; CORRECT?

2  MS. MCGRATH:  THAT'S CORRECT, YOUR HONOR.

3  THE COURT:  SENTENCE WILL RUN CONCURRENTLY AS TO

4  EACH COUNT WITH THE EXCEPTION OF THE PENALTY ASSESSMENTS WHICH

5  ARE FIVE CONSECUTIVE.  PAY $200 IN PENALTY ASSESSMENTS BUT NO

6  FINE.

7  I THINK -- I AM NOT SURE, BUT I THINK THAT THE

8  SENTENCE THAT I HAVE IMPOSED TRIGGERS A WAIVER OF ANY RIGHT TO

9  APPEAL.  WHAT WAS YOUR --

10  MS. MCGRATH:  IT DOES, YOUR HONOR.

11  THE COURT:  WHAT WAS YOUR RANGE, 78 TO WHAT?

12  MS. MCGRATH:  WELL, YOUR HONOR, THE INITIAL RANGE

13  WITHOUT A 5K, IT CERTAINLY TRIGGERS UNDER THAT.  BUT MY RANGE

14  WITH THE 5K RECOMMENDATION WAS 78 TO 97.

15  THE COURT:  EITHER WAY, IT'S WITHIN THE RANGE.  YOU

16  AGREE WITH THAT FINDING THAT THERE IS NO RIGHT TO APPEAL OR TO

17  COLLATERALLY ATTACK THE COURT'S JUDGMENT IN THE FUTURE?

18  MS. FERRARA:  YES, YOUR HONOR.

19  THE COURT:  GOOD LUCK, MS. MADRID.  NO MORE PROBLEMS

20  LIKE THIS NOW.

21  MS. FERRARA:  YOUR HONOR, WILL YOU RECOMMEND THE

22  500-HOUR DRUG TREATMENT PROGRAM?

23  THE COURT:  YES, I WOULD.  IN LIGHT OF THE EVIDENCE

24  THAT HAS BEEN PRESENTED THAT SHE HAD AN ADDICTION TO OXYCODON

25  OR VICODIN, I GUESS.

1          MS. FERRARA:  AND WOULD YOU ALSO RECOMMEND THE

2     WESTERN REGION?

3          THE COURT:  I WILL.  I RECOMMEND PLACEMENT IN THE

4     WESTERN REGION.

5          DID MS. FERRARA TALK TO YOU ABOUT THIS 500-HOUR DRUG

6     TREATMENT PROGRAM?  THAT SHAVES A YEAR OFF THE SENTENCE, SO

7     YOU SHOULD DO THAT.

8          THE PROBATION OFFICER:  YOUR HONOR, WOULD THE COURT

9     CONSIDER DRUG COUNSELING?  I DON'T THINK IT WAS RECOMMENDED

10    BEFORE.

11         THE COURT:  YOU ARE RIGHT.  I'LL ADD THAT AS A

12    CONDITION OF SUPERVISED RELEASE THAT SHE BE SUBJECT TO DRUG

13    COUNSELING AND DRUG TESTING FOR THE FIRST YEAR.  THREE TIMES

14    PER MONTH FOR THE FIRST YEAR.  DON'T MISS DRUG TESTS AND DON'T

15    USE ANY ILLEGAL DRUGS OR DRUGS THAT ARE PRESCRIPTION DRUGS

16    THAT YOU DON'T HAVE A PRESCRIPTION FOR.  IF YOU ARE ON

17    SUPERVISED RELEASE, YOU DON'T GET TO USE ILLICIT DRUGS.  DON'T

18    DO THAT.  GOOD LUCK.

19                         --OOO--

20

21              I HEREBY CERTIFY THAT THE TESTIMONY

22              ADDUCED IN THE FOREGOING MATTER IS

23              A TRUE RECORD OF SAID PROCEEDINGS.

24              S/EVA OEMICK                1-19-2016

25